Annabell SWANSON,
Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,
Defendant-Appellee.

No. 84–5651.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1985.

Decided June 18, 1985.

Martin Taller, Rucker & Taller, Anaheim, Cal., for plaintiff-appellant.

Dennis J. Mulshine, Asst. Regional Atty., Health & Human Services, San Francisco, Cal., for defendant-appellee.

Before SCHROEDER, FLETCHER, and FARRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant, Annabell Swanson, filed for disability benefits on April 5, 1979. Following a hearing and initial denial of those benefits and a subsequent remand because of loss of the administrative record, a second hearing was held on December 23, 1981. After the second hearing, during which additional evidence was introduced, the ALJ recommended that Swanson be found to be disabled from August 19, 1980. Swanson challenged the recommended onset date contending that the disability period should commence from October, 1977. The Appeals Council, however, denied her claim. Swanson then sought judicial review claiming that the ALJ's finding of the August 19, 1980 onset date was not supported by substantial evidence on the record. The district court denied Swanson's claim. We affirm.

## I. FACTS

Annabel Swanson worked as the manager in a fast food chain until she developed a nerve disorder in October of 1977. She underwent surgery for this problem on January 4, 1978 and, according to her attending physician, the surgery relieved her facial pain at that time. Over the course of the next several years Swanson continued to be plagued with a variety of disorders including left side weakness and nerve disorder, similar to that which caused her initial surgery. Because of these problems Swanson underwent additional surgery and was subjected to several hospitalizations and a large battery of diagnostic tests. Although Swanson complained of severe pain, her consulting physicians were at a loss to explain Swanson's problems in light of negative test results consistently obtained over a period of several years. These negative findings led to the conclusion on the part of some of these doctors that Swanson's complaints were primarily subjective. None of the extensive testing done on Swanson reliably indicated any significant cardiological problem.

Despite the negative findings of various tests and the inconsistencies in various doctors' neurological examinations, Dr. Wyatt, Swanson's treating physician since May, 1979, was of the opinion that Swanson was disabled for the entire period he treated her because of left side weakness, neurological problems and pain. Dr. Hyman, in a July 18, 1980 report, also believed Swanson's complaints of pain and felt that she was incapable of work. Several doctors, however, both before and after the ALJ's chosen onset date of August 19, 1980, were unable to find any significant problem with Swanson.

In an August 19, 1980 examination conducted by Dr. Dickstein, an internist, the appellant exhibited the first signs of a cardiac disorder as distinguished from her previous neurological difficulties. Although Dr. Dickstein noted some neurological problems, more significant was an electrocardiogram that indicated myocardial heart damage and a treadmill test that indicated

poor exercise capability. Dr. Dickstein opined that Swanson suffered from multiple ischemic attacks and heart disease and was totally and permanently disabled.

Immediately following Dickstein's examination, Swanson was seen in the Anaheim hospital emergency room for aphasia, left side weakness, and partial paralysis of the left side of her face. An electrocardiogram was inconclusive. The emergency room doctor and the treating physician, Dr. Wyatt, concluded appellant was probably suffering a transient ischemic attack.

Several more examinations were conducted following this last episode with conflicting results. However, on September 8, 1981, Dr. Barbarosh noted a positive treadmill test that indicated ischemia and syndrome X. Dr. Dickstein noted that the positive treadmill test supported his diagnosis of myocardial heart disease. Dr. Barbarosh, after a second examination noted that a December 7, 1981 electrocardiogram was positive for mitral valve prolapse. Also, Dr. Pasnick performed a psychiatric evaluation and felt that, by process of exclusion of other possibilities, appellant was suffering from a psychiatric conversion reaction.

At the administrative hearing, Dr. Torrez, a vocational expert, reviewed the evidence and found that appellant was unable to work as of August 14, 1981 based on Dr. Pasnick's report. Dr. Wyatt testified he witnessed Swanson's left side paralysis on August 19, 1980 and that a recent EKG showed a heart abnormality. Finally, there was testimony that the appellant stated that her second surgery had relieved her of some pain but that it reoccurred within six months, that in May of 1980 she experienced chest pain once or twice a week and that the frequency of the pains had increased since that time.

Based on the medical record and testimony the Administrative Law Judge found appellant to be disabled as of August 19, 1980, the date of Dr. Dickstein's positive clinical finding of heart disorder.

## II. DISCUSSION

The appellant has the burden of proving disability within the meaning of the Social Security Act. *Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir.1980). A disability must be one that results from "anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In this case the Secretary found that the appellant failed to show a disability prior to August 19, 1980.

The Secretary's findings are reviewable as to whether they are supported by substantial evidence and as to whether the Secretary used proper legal standards. 42 U.S.C. § 405(g); *Blacknall v. Heckler,* 721 F.2d 1179, 1180 (9th Cir.1983). Substantial evidence is "more than mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Johnson v. Harris,* 625 F.2d 311, 312 (9th Cir.1980). On review we must consider the record as a whole, not just the evidence supporting the decision of the ALJ. *Thompson v. Schweiker,* 665 F.2d 936, 939 (9th Cir.1982).

In reaching the conclusion that the appellant was disabled only after August 19, 1980, the Secretary gave little weight to the treating physician's opinion and the appellant's subjective complaints of pain. We have held that if the ALJ chooses to disregard the treating physician's opinion he must set forth specific reasons for doing so and this decision must itself be based on substantial evidence. *Murray v. Heckler,* 722 F.2d 499, 501–02 (9th Cir. 1983). Also, the ALJ must make a specific finding as to the credibility of the appellant's subjective complaints of pain, *id.* at 502, though the Secretary need not accept those complaints if they are unsupported by objective findings. *Maounis v. Heckler,* 738 F.2d 1032, 1034 (9th Cir.1984).

This case is replete with conflicting evidence as to the appellant's condition pri-

or to the August 19, 1980 onset date. However, it does not appear that the Secretary misapplied the legal standards in reaching her finding or that the finding is not supported by substantial evidence. The ALJ carefully considered and rejected the appellant's subjective complaints of pain citing a large number of negative clinical findings and the fact that the appellant stopped taking medication to support his conclusion that appellant's complaints were exaggerated. The ALJ also considered and rejected the opinion of Dr. Wyatt, the treating physician, that the claimant was totally disabled prior to August 19, 1980. Again the ALJ noted consistently negative clinical findings and findings that the appellant's ailment was largely unrelated to her former problems and became apparent only in the latter part of 1980. The ALJ therefore acted within his discretion in rejecting both the treating physician's opinion and the appellant's subjective complaints of pain.

■ The ALJ's finding that the appellant was not disabled prior to August 1980 is supported by substantial evidence. The ALJ made a detailed and thorough written summary of the facts of this case, his interpretation of those facts and his findings. He noted that following the appellant's initial surgery, her condition improved and that subsequent neurological exams were unremarkable; that tests done during and after the appellant's second hospitalization in October, 1978, though extensive, showed no abnormality. Some psychiatric problems were recognized, but these did not rise to the level of a severe psychiatric impairment. An examination indicating the possibility of temporal lobe epilepsy was also not confirmed by later examinations or tests. Although the appellant's treating physician stated that he felt the appellant was disabled since he began seeing her, there was sufficient contrary evidence for the ALJ to reject this contention as to the appellant's condition prior to August 1980.

■ Appellant's multiple hospitalizations and subjective complaints of pain indicate that she suffered some impairment prior to August 19, 1980. Yet, the large number of negative test results coupled with the appellant's admission that she improved after surgical proceedures and that she stopped medication indicate that her impairment, during that period, was not so severe as to render her disabled before August 19, 1980. While the ALJ could have chosen an earlier onset date based on the conflicting evidence as to appellant's previous disorders, the question we face is whether the chosen onset date is supported by substantial evidence, not whether an earlier date could have been supported.

■ The first tests indicating a severe disabling condition were the EKG and treadmill conducted by Dr. Dickstein on August 19, 1980. These tests raised the possibility of a disabling heart condition unrelated to the appellant's previous difficulties that the ALJ had found not debilitating. Subsequent tests supported Dr. Dickstein's diagnosis of heart disease including a later EKG which was positive for myocardial abnormalities. The objective EKG, the treadmill, and the later findings corroborating heart disease including the appellant's assertion to Dr. Wyatt that her chest pains increased after May of 1980, provide substantial evidence for the Secretary's decision.[1]

■ Although the Secretary's selection of August 19, 1980 is supported by substantial evidence, we caution that the critical date is the date of *onset* of disability, *not* the date of diagnosis. Here the appellant was plagued by various disorders prior to August 19, 1980, but the disorders that were found to be disabling, a serious heart problem and hysterical conversion, do not appear to have developed definitive dis-

---

1. The ALJ's finding of no severe psychiatric impairment prior to August, 1980 is similarly supported by substantial evidence. The only time that hysterical conversion appeared to be affecting Ms. Swanson was when it was diag-nosed in Dr. Hunter's December, 1980 report as later confirmed by Dr. Pasnick. Even here, however, the diagnosis was only reached by process of elimination.

abling symptoms until about the time of their diagnosis by electrocardiogram and later psychiatric evaluation. Therefore, there is substantial evidence that the date of onset and diagnosis coincided, justifying the selection of August 19, 1980 as the disability onset date. Clearly, however, this coincidence will not appear in every case.[2]

The judgment of the district court is, AFFIRMED.

[2.] Where, for example, the symptoms of disability and available medical evidence are consistent with a disability diagnosed only at a much later date the Secretary would not be substantially justified in relying on the date of diagnosis as the date of disability. Indeed, if the Secretary chose to rely on the date of diagnosis in such circumstances she would be violating her own regulations. Social Security Ruling 83–20 (Jan. 1983) (date alleged by individual should be used as onset date if it is consistent with all available evidence).