**Lydia LEWIS, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. CV 86–8335–ER(GHK).**

United States District Court, C.D. California.

Dec. 22, 1987.

Suzanne C. Leidner of Leidner & Leidner, Los Angeles, Cal., for plaintiff Lewis.

William B. Spivak, Jr., on behalf of Robert C. Bonner, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Los Angeles,

Cal., (Judith A. Waltz, Asst. Regional Counsel, Richard K. Waterman, Chief Counsel, Region IX, Dept. of Health and Human Services, Washington, D.C., of counsel), for defendant Bowen.

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION OF UNITED STATES MAGISTRATE

RAFEEDIE, District Judge.

This matter is before the court upon a Complaint For Review of the Final Decision of the Secretary of Health and Human Services.

The court has reviewed the entire record in this matter.

IT IS ORDERED that the court adopts the Memorandum and Recommendation heretofore filed by Magistrate King on all issues presented to him in the action. Magistrate King's Memorandum and Recommendation correctly states the law and is supported by the record in this case.

The court specifically adopts the Memorandum and Recommendation filed on December 22, 1987 for purposes of publication.

## MEMORANDUM AND RECOMMENDATION OF UNITED STATES MAGISTRATE

GEORGE H. KING, United States Magistrate.

Plaintiff has filed a Motion for Summary Judgment and/or Remand.[1] Defendant, Secretary of Health and Human Services, has filed a Cross–Motion for Summary Judgment seeking affirmance of his decision denying plaintiff supplemental security income benefits.

### Administrative Proceedings

On January 11, 1985, plaintiff applied for supplemental security income benefits (Certified Administrative Record, hereinafter "A.R." 52–61) alleging disability beginning February 15, 1980 due to back problems and arthritis. Plaintiff's application was denied initially (A.R. 62–64), and upon reconsideration. (A.R. 66–78).

On June 27, 1985, plaintiff requested an administrative hearing (A.R. 69–70) which was held on January 2, 1986 (A.R. 33–51) before an Administrative Law Judge (hereinafter "ALJ"). The ALJ issued his decision on March 31, 1986 finding, *inter alia,* that plaintiff's impairments did not prevent her from performing her past relevant work, and she was therefore not disabled. (A.R. 23). On April 28, 1986, plaintiff sought review of the hearing decision. (A.R. 13–14). By decision dated July 21, 1986, the Social Security Appeals Council concluded there was no basis for changing the ALJ's decision. Accordingly, the ALJ's decision stands as the final decision of the Secretary in plaintiff's case. (A.R. 8–9).

### Background

Plaintiff was born on June 21, 1944, (A.R. 52), and has a high school diploma with some business training. (A.R. 38). She last worked in February, 1980 (A.R. 38), as a secretary, switchboard operator, medical billing supervisor, and supervisor of employees at a mental health services facility. (A.R. 38–40).

An electromyogram (EMG) dated July 29, 1980 showed plaintiff with chronic bisegmental neurogenic denervation at L5–S1 left with associated early irritation of the S1 nerve root. The radiologist characterized this as "[a]n *abnormal* electromyogram for age 36." [Emphasis in original]. (A.R. 105). The medical records from Charles M. Bosley, M.D., covering a period of 1980 to September, 1983, (A.R. 106–115), and those of Shirzad A. Abrams, M.D. dated February 20, 1985 (A.R. 116–118) are essentially unremarkable. While neither physician utilized any diagnostic tools more sophisticated than the x-ray, Dr. Abrams noted from his review of the x-ray film that "[t]here may be some degenerative changes on the left side of the L4–5 level,

---

**1.** Although plaintiff's motion is also styled as one for summary judgment, she seeks only re-   mand of this case.

not well seen on these simple views." (A.R. 117).

Similarly, records from the Olive View Medical Center between March, 1985 and July, 1985 showed that x-rays of the lumbosacral spine were within normal limits, and there was no clinical indication of radiculopathy, or herniated disc syndrome. (A.R. 121). Because the records did not indicate that plaintiff had had a myelogram, Dr. Morris suggested that a current neurologic and neurosurgical evaluation was necessary, and referred plaintiff to the Neurosurgery Clinic at Los Angeles County Hospital for a full evaluation, including a CT scan and a myelogram. (A.R. 121).

Starting in May, 1985, plaintiff was evaluated at the Los Angeles County–USC Medical Center. Although an EMG was normal, (A.R. 128), x-rays of the lumbo-sacral spine dated May 9, 1985 showed moderate telescoping into the neuroforamina at the L–5, –1 level. The radiologist recommended a computer tomography of the spine. (A.R. 129).

A lumbar metrizamide myelogram and a lumbar CT scan were performed. From the myelogram, the radiologist found epidural compression of the thecal sac ventrally and mild compression of the root sleeves bilaterally at the 4–5 segment. There was also minor deformity of the root sleeve on the left side at S1. No other abnormalities were seen. From these findings, the radiologist concluded that a herniated disc was suspected at L4–5 with compression of the L5 nerve roots bilaterally and the thecal sac ventrally. There was also subtle compression at the L5 nerve root on the left. (A.R. 143–144).

A CT scan resulted in a finding of mild central disc protrusion at L4–5 causing some flattening of the thecal sac and some mild encroachment of the neuroforamina bilaterally. At L5–S1, "there [was] left lateral disc herniation at the upper portion of the left S1 nerve root." (A.R. 145). There was no evidence of disc herniation at the L3–4 level. From these findings, the radiologist concluded there was lateral disc herniation encroaching on the neuroforamina and left nerve root, and additional mild central disc herniation or protrusion at the L4–5 level. (A.R. 146).

At the hearing, plaintiff testified to severe pain in her back going out to her hips and down her left leg. (A.R. 43). Stepping down on her foot caused pain, swelling, and numbness in her legs. She also had muscle spasms in her leg and back. (A.R. 43–44). Plaintiff said she was unable to sit too long (A.R. 44), to lift, bend, or stoop (A.R. 46), and had trouble sleeping at night. (A.R. 46). She said her symptoms were getting worse. (A.R. 46). While she was not opposed to surgery, she wanted a second opinion to ensure that surgery might actually do some good. There was some indication that her condition would not improve even with surgery. (A.R. 48–49). At the hearing, the ALJ suggested another orthopedic evaluation because the medical records from County–USC Medical Center were "old" because they were "six months old." (A.R. 49).

An orthopedic evaluation was conducted by Magdi Ghaleb, M.D. In his report dated February 10, 1986 (A.R. 154–156), Dr. Ghaleb concluded that plaintiff's complaints were subjective and not substantiated by any other objective findings. He said the x-rays showed a slight thoraco-lumbar scoliosis with main curvature to the left and a slight narrowing of the intervertebral space between L–5/S–1. (A.R. 156).

Based upon his review of the medical evidence, the ALJ found that the preponderance of the evidence led to a conclusion that plaintiff retained the residual functional capacity to do light work. While the ALJ said plaintiff may have had a severe limitation from a probable herniated nucleus pulposus in June of 1985, which impairment may have met the Secretary's Medical Listings at § 1.05(c) regarding disorders of the spine, he said this condition must have resolved itself because it was not revealed on Dr. Ghaleb's x-rays. Because plaintiff could return to her prior relevant work, she was not disabled within the meaning of the Social Security Act. (A.R. 22–23).

*Scope of Review*

The Secretary's findings are reviewable to determine if they are supported by sub-

stantial evidence and if the Secretary used the proper legal standards. 42 U.S.C. § 405(g); *Swanson v. Secretary of Health and Human Services*, 763 F.2d 1061, 1064 (9th Cir.1985). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971).

### Discussion

■ The Magistrate has carefully reviewed the record as well as the argument of the parties, and concludes that the ALJ's finding that plaintiff is capable of doing light work is clearly not supported by substantial evidence. While it is true that the medical records predating those from the County–USC Medical Center are all inconclusive at best, and would have, without more, supported the ALJ's conclusion, they do not support the ALJ's conclusion when viewed in light of the entire record.

■ It is well settled in this Circuit that a reviewing court must consider both evidence that supports and evidence that detracts from the ALJ's conclusions. The ALJ's conclusions cannot be affirmed simply by isolating a specific quantum of supporting evidence. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir.1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975). This court must review the entire record to see if, on the whole, there is such relevant evidence as a reasonable mind might accept as adequate to support the ALJ's conclusions.

Upon a careful review of all the records, it is apparent that plaintiff suffers from severe impairments which include herniated discs and compression of nerve roots. The ALJ was in error when he concluded the preponderance of the medical evidence showed there was no severe problem with the plaintiff. An evaluation of the medical evidence is not a mere arithmetic exercise. A determination of impairment does not result from the mere addition of opinions against disability on the one hand compared with the number of opinions for disability on the other. Logic and common

sense tell us that it is the quality, not necessarily the quantity, of the medical evidence which forms the basis for a lawful conclusion.

Viewed in this light, there is no question the only probative evidence of plaintiff's condition resulted from the advanced and sophisticated diagnostic techniques used by the physicians at the County–USC Medical Center. Despite all the medical evidence upon which the ALJ relied, none of those doctors utilized anything other than x-rays and EMG's. None of them utilized the myelogram and the CT scan, diagnostic tools which the Secretary has recognized provide a more sensitive and better resolution of x-ray images of spinal structures, and which may be useful in diagnosis of certain conditions, including that of the herniated disc. (*See* the Secretary's Cumulative List of New or Improved Medical Techniques and Evaluation, quoted in Plaintiff's Motion for Summary Judgment and/or Remand, p. 6, lines 5–16). In fact, the myelogram and CT scan showed herniated discs.

The ALJ apparently recognized that herniated discs are severe impairments which could result in plaintiff's disability, but held that she was not disabled because he chose to believe the severe condition had allegedly resolved itself because x-rays, an inferior diagnostic tool, failed to adequately detect such condition. Plaintiff's herniated discs no more ceased to exist when Dr. Ghaleb used x-rays than would a distant object when one removes binoculars from one's naked eyes. To hold otherwise, as the ALJ did here, is contrary to logic and common sense. Because the ALJ's conclusion that the "significantly limiting impairment" had resolved itself (A.R. 22) is not supported by the medical record or substantial evidence, his finding based thereon that plaintiff could do the full range of light work is likewise unsupported by substantial evidence.

■ Additionally, the ALJ also committed legal error by discrediting plaintiff's testimony of pain and limitations. In this regard, the ALJ merely stated that "plaintiff's testimony regarding her subjective

complaints, including pain, and their effect on her ability to perform basic work-related activities, was not credible in light of the objective medical evidence and my observations." (A.R. 23).

There is substantial evidence in the medical record to support a finding that plaintiff's complaints of pain were and are associated with clinically demonstrated impairments. *See Howard v. Heckler,* 782 F.2d 1484, 1488 n. 4 (9th Cir.1986). Plaintiff's lateral disc herniation with encroachment upon nerve roots is a clinically and objectively determinable impairment which is normally associated with certain levels of pain. Because it is never required that medical evidence identify an impairment which would make a certain level of pain inevitable, it is improper as a matter of law for the ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by the objective medical findings. *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir.1986). In this case, the ALJ has done precisely that which *Cotton* has prohibited. He has relied solely upon the objective medical records to discredit what he perceived as plaintiff's excess pain testimony.

To be sure, the ALJ included the alleged justification that his finding was based also upon his observations. However, to do so is likewise legal error because he may not base a finding of no credibility and no disability solely upon his observation of plaintiff's demeanor at the administrative hearing. This type of "sit and squirm jurisprudence" was rejected by this Circuit in *Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir.1985). In any event, the ALJ's own observations cannot form the basis of his rejection of her testimony and subjective complaints since the ALJ noted in his discussion that "she was observed to walk with care. She sat on one side. She seemed to be uncomfortable during the hearing." Thus, quite aside from the legal insufficiency of the ALJ's conclusions, they are also not supported by his own factual findings. (A.R. 22).

Because there is no substantial evidence to support the ALJ's finding that plaintiff can do light work, and because the ALJ committed legal error in his rejection of plaintiff's subjective complaints, including pain, remand is required in this case. On remand, the Secretary shall re-evaluate all the evidence, assigning value to the medical evidence based upon a qualitative, not necessarily quantitative, analysis of the medical reports. Further, if the Secretary finds that plaintiff does suffer from a probable herniated nucleus pulposus as suggested by the ALJ (A.R. 22), he shall determine a proper date of onset of that impairment for purposes of analysis under the durational requirement. He should note that the date of diagnosis by the myelogram and the CAT scan is not necessarily the date of the onset of the impairment. Further, the Secretary shall determine if in fact such impairment meets or exceeds the Secretary's Medical Listings. If it does not meet the Listings, the Secretary shall re-evaluate whether plaintiff is capable of doing any substantial gainful activities despite this impairment. In this regard, the Secretary shall evaluate plaintiff's testimony of subjective complaints, including pain, based upon lawful considerations, and if he concludes that such testimony is not believable, he shall set forth specific findings to that effect which are supported by specific cogent reasons for the disbelief. *See Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981).

## Conclusion

After careful review and consideration of the facts and legal arguments presented in this case, the Magistrate concludes the Secretary's finding that plaintiff is capable of doing light work is not supported by substantial evidence, and the Secretary's rejection of plaintiff's testimony regarding her subjective limitation, including pain, is error as a matter of law.

Accordingly, the Magistrate recommends that Plaintiff's and Defendant's Motions for Summary Judgment be denied, that Plaintiff's alternative Motion for Remand be granted, and that the case be remanded to the Secretary for additional administra-

tive proceedings consistent with this opinion.