Gladys **MADRID**, Plaintiff,

v.

Shirley **CHATER**, Commissioner of the Social Security Administration, Defendant.

No. CV 95–6860(JG).

United States District Court, C.D. California.

March 27, 1997.

---

**1152**

Suzanne C. Leidner, Leidner & Leidner, Los Angeles, CA, for Plaintiff.

Nora M. Manella, U.S. Attorney, Leon W. Weidman, Asst. U.S. Attorney, Chief, Civil Div., Dorothy Schouten, Asst. U.S. Attorney, Los Angeles, CA, for Defendant.

## MEMORANDUM AND ORDER

### (Social Security)

GROH, United States Magistrate, Judge.

Plaintiff has filed a complaint under 42 U.S.C. § 405(g) seeking review of the decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability insurance benefits and supplemental social security income (SSI) benefits under Titles II and XVI of the Social Security Act. Defendant has answered and the parties have filed cross-motions for summary judgment. For the reasons discussed below, I conclude that the Commissioner's decision should be affirmed and the complaint dismissed.

## BACKGROUND

On May 29, 1992, plaintiff filed applications for disability benefits and SSI, claiming disability since December 5, 1990, due to a respiratory condition and injury to her eardrums. (Administrative Record (A.R.) 51–55, 81.) Initially and upon reconsideration, plaintiff's application was denied, and she received a hearing before an Administrative Law Judge (ALJ) on November 14, 1994. (A.R.31, 56–74.) The ALJ found that plaintiff did not meet the disability insured status requirements on December 5, 1990, the date she stopped working.[1] He further found that plaintiff had severe residuals from the excision of the left lung and bilateral ear surgeries. (A.R.16.) He determined that plaintiff retained the residual functional capacity to perform work-related activities other than work involving lifting and carrying more than twenty pounds occasionally and ten pounds frequently, exposure to environmental irritants, and extreme noises due to a slight hearing loss. (A.R.16–17.) Concluding that plaintiff's past relevant work did not require the performance of work-related activities precluded by her functional capacity, the ALJ denied her claim at step four of the sequential evaluation process.[2] (A.R.17.) The Appeals Council denied plaintiff's request for review (A.R.2–3), and the ALJ's decision stands as the Commissioner's final decision in this case.

---

1. Plaintiff does not dispute that determination, which renders her ineligible for disability insurance benefits (but not for SSI benefits).

2. The regulations prescribe a five-step evaluation. 20 C.F.R. §§ 404.1520, 416.920. In summary, in order to determine disability:

   [t]he following steps are addressed in order. (1) Is the claimant presently unemployed (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Does the impair-

ment prevent the claimant from performing his/her past relevant work? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

   *Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984); *see also Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991).

## RELEVANT RECORD EVIDENCE

Born on February 13, 1949, plaintiff was 45 years of age when the ALJ's decision was issued and had completed two years of schooling in her native El Salvador. (A.R.36, 51.) She worked as a sewing machine operator in this country from May 1978 until December 5, 1990. (A.R.37, 75–, 81.) There is no evidence that she has engaged in substantial gainful activity since that date.

Plaintiff was involved in a car accident in 1981 and, as a result, underwent a left pneumonectomy (surgical removal of part or all of a lung) in 1981 or 1983.[3] There is no record of subsequent medical treatment until March 1991, when plaintiff went to Los Angeles County–USC Medical Center (LAC–USC) for ear problems related to chronic ear infections. (A.R. 153–155, 162, 166, 174, 175.) Plaintiff underwent corrective ear surgeries at LAC–USC in August 1991, December 1992, and April 1993.[4] (A.R.107–108, 122–24, 153–155.) The outcome of those procedures appears to have been satisfactory.[5] (A.R. 105–106, 108, 112, 124, 139, 147, 151, 152, 155.) January 1993 x-rays showed "status post left pneumonectomy with compensatory right emphysema" but revealed no abnormalities of the lumbosacral spine or the skull. (A.R.192.) In October 1993, plaintiff complained of low back pain and was given flexion exercises. (A.R.145–146.) Pulmonary tests conducted in October 1993 and January 1994 showed a "moderate chest restriction." (A.R.194.) A January 1994 x-ray of the abdomen was normal, as was an August 1994 abdominal ultrasound. (A.R.180, 187.) Plaintiff was treated at W.A.B. Medical Clinic for bronchitis and osteoarthritis in August 1994. (A.R. 183.) She returned later that month complaining of weakness, dizziness, and shortness of breath, but the treatment

diagnosis is undecipherable, and there are no subsequent medical records. (A.R.182.)

Plaintiff was represented by counsel at the November 1994 hearing before the ALJ. Testimony was received from plaintiff and a vocational expert. Plaintiff testified that her last job as a sewing machine operator, which she held for seven years, involved some lifting, and that the earlier jobs did not involve much lifting. (A.R.36, 37.) She stated that she had been hospitalized "about three times" for bronchitis since her lung surgery. (A.R.38.) She complained of back pain and vomiting "every so often" or "every day." (A.R.38.) She testified that her daughter did most of the housework but that she sometimes did some, slowly, due to shortness of breath. (A.R.39.) She testified that she did not go shopping (on account of dizziness and a fear of falling) nor visit friends (because "I can't be where there are lots of people or I can't stand it when they talk too much,") but did attend church weekly with her children. (A.R.39–40.) As of the hearing date, plaintiff was taking Albuterol (for asthma), Naprosyn (for arthritis), Sudafed (for congestion), and iron tablets, but her medications chart does not state when those medications were first prescribed. (A.R.40, 199.)

Ms. Trost, a vocational expert called by the Commissioner, testified that all of Ms. Madrid's past work was as a sewing machine operator and was light, semi-skilled work. (A.R.41.) In response to a hypothetical posed by the ALJ, she testified that an individual of plaintiff's background who had the capacity to perform light work, a slight hearing impairment, and moderate restrictions in activities stemming from pulmonary deficiencies could perform plaintiff's past relevant work as a sewing machine operator. (A.R.42.)

---

3. The record does not include treatment records related to plaintiff's lung surgery, but her status post-pneumonectomy is reflected in several later medical histories and records. (A.R.80, 81, 115, 125, 134, 145, 146, 157, 181, 189.) Those records are unclear, however, as to the date of the procedure and whether all or only a part of the left lung was removed.

4. Plaintiff underwent left and right tympanoplasties, a surgical procedure to correct perforation of the eardrum and to improve hearing.

(A.R.153.) See 4 J.E. Schmidt, *Attorneys' Dictionary of Medicine* (1996 ed.) at T–295. During the December 1992 tympanoplasty, a cholesteatoma (cyst or cyst-like tumor) was also removed from her left ear. (A.R.122.) See *id.* at C–197.

5. The post-surgical notations are overwhelmingly positive and include comments such as "doing well," "keep ears dry," "well-healed," "no fluctuation to hearing," "no dizziness," "no complaints," "no [ear pain]". (A.R.104, 112, 118, 119, 120.)

## DISCUSSION

Under 42 U.S.C. § 405(g), the Commissioner's decision is subject to review in order to determine whether: (1) the findings are supported by substantial evidence, and (2) the Commissioner applied the proper legal standard. *Swanson v. Secretary of Health & Human Services,* 763 F.2d 1061, 1064 (9th Cir.1985). "Substantial evidence is more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Plaintiff contends that (1) the ALJ erred in determining that plaintiff retains the ability to perform her past relevant work; (2) the ALJ erred in discounting plaintiff's testimony about her subjective complaints; and (3) the hypothetical utilized by the ALJ did not accurately reflect all of plaintiff's impairments. For the reasons stated below, I find each of plaintiff's contentions to be without merit.

### 1. *Plaintiff's Capacity To Perform Her Past Relevant Work*

▮ Plaintiff contends that the ALJ erred by failing to compare the physical and mental demands of her past work with her residual functional capacity. In particular, plaintiff complains that the ALJ did not consider plaintiff's capacity for sustained work activity on a regular and ongoing basis.[6]

▮ To determine whether a claimant has the residual functional capacity to perform his past relevant work, the Commissioner must ascertain the demands of the claimant's former work and then compare the demands with his present capacity. *Villa v. Heckler,* 797 F.2d 794, 797–98 (9th Cir.1986). Although not required to do so, the ALJ in this case enlisted the services of a vocational ex-

pert to assist in evaluating plaintiff's ability to perform her past work. The expert's qualifications were accepted without objection. (A.R.40–41.) She heard plaintiff's testimony and indicated that she had reviewed the file to familiarize herself with plaintiff's work and medical history.[7] (A.R.41.) She testified that she needed no additional information to render her opinion that all of plaintiff's past work was as a sewing machine operator, which is classified in the *Dictionary of Occupational Titles* (DOT) as light, semi-skilled work. (A.R.41.) She further opined that there was nothing in the record to indicate that plaintiff performed the job of sewing machine operator other than as described in the DOT.[8] (A.R.42.)

The expert then responded to four hypothetical questions. Each posited a hypothetical individual with plaintiff's educational and work background and a different residual functional capacity. (A.R.42–44.) The first hypothetical, on which the ALJ later relied to find plaintiff not disabled, described an individual who could perform all of the activities comprised in the definition of light work, including "lifting and standing and walking, pushing and pulling and all of those things," but with a "slight hearing" impairment and "moderate restrictions" due to pulmonary deficiencies, particularly in terms of stamina. (A.R.42.) Thus, the hypothetical utilized by the ALJ did not define plaintiff's exertional capacity solely in terms of lifting ability, without regard to possible restrictions in her ability to sustain work activity. Rather, that hypothetical, and the expert's testimony in response thereto, contemplated a person who could perform the varied activities involved in light work with pulmonary deficiencies, including reduced stamina. The expert testified that such a person could perform the job of sewing machine operator as described in DOT. (A.R.44.) She added that "there is not

---

**6.** Plaintiff does not specifically challenge the ALJ's assessment that plaintiff can perform light work with the limitations he noted. Rather, she alleges that the ALJ failed to consider the need to maintain pace and to tolerate a sustained daily work routine. Pl's. Mem. at 5–7.

**7.** The record includes disability reports with plaintiff's description of her former job duties. (A.R.75–79, 86.)

**8.** There is a rebuttable presumption that the job description in the DOT accurately describes a: claimant's past relevant work. *See Villa,* 797 F.2d at 798. In this case, the expert's testimony regarding plaintiff's former work is based on the DOT classification. Plaintiff does not contend that the DOT classification is inaccurate nor has she adduced any evidence to rebut the presumption that the DOT description controls.

a lot of exertion required as a sewing machine operator. It really would be sedentary except for the foot controls which makes it a light occupation." [9] (A.R.42–43.)

Based on the foregoing, it is evident that the ALJ developed expert testimony concerning plaintiff's capacity to perform her past work with limitations in her hearing and pulmonary capacity, and that the expert's testimony provides substantial evidence supporting the ALJ's determination that plaintiff could nonetheless perform her past work as a sewing machine operator.[10] The record reveals, furthermore, that plaintiff worked as a sewing machine operator for seven or nine years (depending on the correct date of surgery) *after* surgical excision of her lung. There is no objective medical evidence in the record corroborating plaintiff's statement on her disability applications that she developed a condition that left her totally disabled on December 5, 1990 (or, for that matter, at any time thereafter).[11] (A.R.47, 51.) Indeed, there is no record evidence of any medical treatment prior to March 1991 and no evidence of treatment for lung-related problems until 1993.[12] Given the absence of such evidence, the fact that plaintiff worked for years prior to her alleged onset date without any documented ill-effects from her lung surgery seriously undermines her argument that the ALJ erred in finding that she can return to such work. For all of these reasons, I conclude that there is no merit to plaintiff's contention that the ALJ failed properly to assess her ability to perform her past relevant work.

2. *Plaintiff's Subjective Symptom Testimony*

Plaintiff alleges that the ALJ erred in discounting her subjective symptom testimony. In his decision, the ALJ stated that he found her subjective complaints not credible because they were not consistent with the medical evidence and because her impairments were controlled with medication without any reported side-effects. (A.R.15–16.)

■ As noted by the ALJ, there is no medical report or other evidence in the record indicating that plaintiff is unable to work, much less that she is totally physically incapacitated from performing the basic activities of daily living. Furthermore, there is a serious question as to whether the medical evidence in the record related to plaintiff's subjective complaints even rises to the level required for specific findings under *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc). The ALJ's duty to make specific credibility findings arises when a claimant produces medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain or other symptoms. Once such evidence is produced, the ALJ cannot discredit subjective complaints solely because they are not fully corroborated by the medical evidence. *Id.* at 343; *accord, Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir.1995) (per curiam).

■ In this case, the treatment notes document that plaintiff complained of chest pain in January 1993. Motrin was prescribed; however, no medical diagnosis was made, and there is no record of similar complaints during follow-up visits. (A.R.115.) She first reported back pain in October 1993 and was referred to a back class to learn flexion exercises, but there is no indication that any medication was prescribed. (A.R.146.) A February 1994 report of her attendance at the class suggests that the pain was caused bay the spinal column curving into the area left vacant by the lung removal. (A.R.145.) She was given instruction in body mechanics

9. There is no evidence in the record to support plaintiff's belated assertion that the levels of environmental irritants and noise in garment factories are beyond her tolerance. Indeed, plaintiff's counsel declined the ALJ's invitation to cross-examine the expert, stating, "I think you've covered all the bases." (A.R.44–45.)

10. The expert also testified that a person restricted to sedentary work with a slight hearing loss and moderate pulmonary restrictions could perform jobs numbering in the thousands locally and nationally. (A.R.43–44.)

11. There is no report from a treating or examining physician concluding that plaintiff is disabled or specifying the nature and extent of her functional limitations.

12. The inference raised as to the gravity of plaintiff's condition by the bare list of treatment dates (Pl's. Mem. at 2–3) is overstated. As the text of plaintiff's memorandum confirms, most of those visits were occasioned by the diagnosis and treatment of plaintiff's ear and lung problems, which the ALJ properly found to be not disabling.

and exercises and told to contact the clinic if the need arose; again, no medication was mentioned. (A.R.145.) Several months later, in August 1994, plaintiff was diagnosed with acute bronchitis and osteoarthritis, the first formal diagnoses of current, symptomatic lung and back conditions. Ibuprofen was prescribed along with medications to relieve and manage her pulmonary symptoms. (A.R.182–183.)

Thus, for the period from December 5, 1990, the alleged onset, through September 1993 (and perhaps as late as February 1994), there is no objective medical evidence whatsoever of an underlying impairment that is "reasonably likely" to have caused back pain. Even after September 1993, moreover, plaintiff received only limited treatment for back pain. Similarly, the earliest objective evidence of a pulmonary impairment reasonably likely to give rise to chronic fatigue and shortness of breath is dated August 1994.[13] Finally, plaintiff's testimony that she suffers from nausea, dizziness and fear of falling—symptoms "reasonably likely" to be caused in some degree by ear defects—is nonetheless suspect because the record indicates that her ear problem; were substantially remedied by the three ear surgeries, of which the latest was in April 1993.

Assuming *arguendo* that the *Bunnell* threshold was met, the ALJ did offer specific reasons for discrediting plaintiff's testimony that her symptoms prevented most routine daily activity.[14] As noted above, he cited medical evidence indicating that plaintiff had recovered or been successfully treated for the ear, lung, and back problems she experienced. He observed that plaintiff's conditions were controlled with medication, a finding that plaintiff does not dispute.[15] *See Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir.1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.") He also noted that there was no indication that side-effects from the medication interfered with normal activities. *See Orteza,* 50 F.3d at 750 (in making credibility determination, adjudicator may consider, *inter alia,* effectiveness or adverse side effects of pain medication). I conclude that the ALJ's credibility determination was based on the proper legal standards and was supported by substantial evidence of record.[16]

### 3. *Hypotheticals*

▮▮▮ Plaintiff asserts that the hypothetical question relied on by the ALJ did not

---

**13.** There is no medical testimony or other evidence prior to February 1994 suggesting that plaintiff's ear or lung residuals were "reasonably likely" to give rise back pain. (It must be surmised that the curvature of the spinal column first noted in 1994 was a very gradual development; x-rays taken in January 1993 demonstrated *no* spinal abnormality.) Furthermore, there is no documented treatment for lung symptoms until August 1994. Lung surgery performed in 1981 or 1983 cannot be said to provide objective evidence of a condition reasonably likely to produce symptoms; seven to ten years later where (1) there is no medical testimony or other record evidence to that effect; (2) no surgical or post-surgical records are provided; (2) plaintiff worked steadily for several years after surgery; and (3) the record shows no related interim treatment or diagnoses.

**14.** It should be borne in mind that the ALJ did not completely discount those complaints, as he found that plaintiff had hearing and pulmonary restrictions.

**15.** Although she disputed the ALJ's credibility finding in her opening memorandum, plaintiff did not address the ALJ's conclusion that her

conditions were controlled by medication. In her reply memorandum, she asserted that "[t]he fact that her conditions have been controlled likewise does not negate the fact that she suffers ongoing symptoms and limitations." Pl's Reply at 1.

**16.** There are other inconsistencies in the record that further undermine the credibility of plaintiff's excess symptom allegations. Plaintiff did not complain of any hearing loss or noise sensitivity in her testimony before the ALJ. Nor did she complain of bleeding from the ear, migraines, or headaches, which were two primary reasons she gave on a disability report for her inability to work. (A.R.81.) Moreover, plaintiff reported weakness, fatigue, or dizziness to her doctors on only a few occasions in the period from March 1991 to August 1994. Indeed, in her disability report dated 6/24/92, she described her daily activities as "cooking at night, cleaning all day." (A.R.84.) In her Reconsideration Disability Report dated 4/11/93, she reported that no restrictions had been placed on her by a physician since she filed her claim nor had any changes occurred in her daily activities; she also stated, "I can take care of my personal needs." (A.R.89–91.)

accurately reflect her impairments. "The limitation of evidence in a hypothetical question is objectionable 'only if the assumed facts could not be supported by the record.'" *Magallanes v. Bowen,* 881 F.2d 747, 757 (9th Cir.1989). Plaintiff makes no effort to specify how the assumptions in the hypothetical are faulty. According to the expert's testimony and plaintiff's own descriptions of her past jobs, her past work as a sewing machine operator was light work, and plaintiff remained able to perform that work for years despite her lung removal. As previously discussed, *supra* pp. 1155–56, there is no objective medical evidence or medical opinion corroborating her assertions that her conditions deteriorated significantly or resulted in disability on or after December 1990. Her ear surgeries were successful except for a mild residual hearing loss, which was reflected in the hypothetical. Her pulmonary tests showed a "moderate" restriction, which the ALJ adopted in his hypothetical. For all of the reasons outlined above, the ALJ was justified in discounting plaintiff's subjective complaints. Accordingly, I find that the hypothetical on which the ALJ relied was supported by substantial evidence.

## CONCLUSION

For all of the reasons stated above, I conclude that the Commissioner's decision is supported by substantial evidence and comports with the proper legal standards. The Commissioner's motion for summary judgment is therefore GRANTED and the complaint is dismissed with prejudice.[17]

---

**17.** Although unnecessary to the disposition of this case, it is noted that, according to the record, plaintiff was not a United States citizen when she filed her applications for benefits under Titles II and XVI of the Social Security Act. Accordingly, plaintiff's eligibility for benefits may have been affected by the provisions of Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, 110 Stat. 2260, enacted August 22, 1996 (codified at, *inter alia,* 8 U.S.C.A §§ 1601–1645), which restricts the eligibility of non-citizens for certain public benefits.