**Leah CALSADILLAS, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of the Social Security Administration [1], Defendant.**

**No. CV 96–3686(JG).**

United States District Court, C.D. California.

April 3, 1998.

Kenneth S. Apfel should be substituted for Shirley S. Chater as the defendant in this case. No further action need be taken to continue this suit. See 42 U.S.C. § 405(g).

Tom M. Siegel, Tom M. Siegel Law Offices, Los Angeles, CA, for Plaintiff.

Leon W. Weidman, Gwendolyn Millicent Gamble, Asst. U.S. Attys., Office of U.S. Attorney, Civil Division, Los Angeles, CA, for Defendant.

2. The ALJ convened a supplemental hearing in March 1995 but continued the hearing after determining that plaintiff did not wish to proceed without a representative. (A.R.89–100.)

3. The regulations prescribe a five-step evaluation. 20 C.F.R. §§ 404.1520, 416.920. In summary, in order to determine disability:
[t]he following steps are addressed in order. (1) Is the claimant presently unemployed (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Does the impair-

## MEMORANDUM AND ORDER

GROH, United States Magistrate Judge.

Plaintiff has filed a complaint under 42 U.S.C. § 405(g) seeking review of the decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits under Title II of the Social Security Act. Defendant has answered and the parties have filed cross-motions for summary judgment. For the reasons discussed below, the Commissioner's decision will be affirmed.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits in May 1992, claiming to have been disabled since December 31, 1988, due to right hand problems, chronic low back and right leg pain, and shortness of breath. (Administrative Record (A.R.) 151, 155, 171.) Her application was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ) on December 14, 1993. (A.R.151–161, 287–293.) Plaintiff's request for review of that decision was granted, and the Appeals Council remanded the matter for a supplemental hearing, which was conducted before the same ALJ on May 16, 1995.[2] (A.R.87, 294–300.) Plaintiff was represented by counsel at that hearing (and the initial hearing) and testified, as did a vocational expert. (A.R.13, 101.).

In a decision dated June 29, 1995, the ALJ concluded that plaintiff was capable of performing jobs that exist in significant numbers in the national economy, and he therefore found plaintiff not disabled at step five of the sequential evaluation procedure.[3] (A.R.13–19.) The Appeals Council denied plaintiff's

ment prevent the claimant from performing his/her past relevant work? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.
Garfield v. Schweiker, 732 F.2d 605, 607 n. 2 (7th Cir.1984); see also Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir.1991).

request for review of that decision. (A.R.3–4.)

## RELEVANT RECORD EVIDENCE

Plaintiff was 54 years old at the time of the hearing. After receiving a G.E.D., she completed two years of college and vocational training as a keypunch operator. (A.R.13, 167.) She held jobs as a keypunch operator from 1968 and 1988, when she stopped working due to a laceration of the tendons in her right hand which required surgery and physical therapy. (A.R.44, 51–53, 168, 100, 200–204, 213–216, 263.) [4]

In her testimony at the first and second hearings and on her disability reports, plaintiff stated that she did not subsequently return to work on account of pain and stiffness in her right fingers, back and leg pain that interfered with her ability to sit and stand, dizziness, shortness of breath, and stomach pain (A.R.45–56, 58–64, 66–68, 74–75, 109–116, 163, 171, 173, 174, 179–188.) At the first hearing (in December 1993), she testified that she was taking Vicodin (a painkiller) and Valium daily, and that she also used Theodur, Brethine, and an atomizer for breathing problems.[5] (A.R. 56–58, 62–64, 74; see also A.R. 270.) At the May 1995 hearing, she submitted a form showing that, in addition to asthma medications, she had been prescribed a number of drugs for "pain," none of which was prescribed before September 1994, the month her disability insured status expired.[6] (A.R.327–328.)

At the December 1993 hearing, she complained of drowsiness from Vicodin (A.R.48, 57) and dizzy spells, but denied that the dizziness was related to medication. (A.R.63–64, 66–67.) At the May 1995 hearing, she testified to drowsiness from the pain medication and insomnia and stomach irritation from the asthma medications. (A.R.121–122.) Plaintiff also wore a soft collar and used a cushion at the May 1995 hearing. She testified that she had used the collar since January 1994 and the cushion since only the week before. She did not state who, if anyone, prescribed them, and the record is silent on the subject. She further testified that Dr. Hyshaw had prescribed a back brace in 1991 and that she wore it every day. (A.R.122–123.)

Plaintiff's testimony at the 1993 and 1995 hearings indicated that she lived by herself and that her activities included driving a car, taking care of her personal hygiene, making her bed, preparing meals, dusting, occasional shopping, visiting and entertaining relatives, watching TV, reading, and sometimes attending church. She stated that relatives helped her with heavier chores, such as laundry and vacuuming. (A.R. 47–48, 68–73, 125–127; see also A.R. 166, 173.) She stated that she could lift 5–10 lbs., stand from 5–10 minutes, and sit for 15–20 minutes, after which time she would need to alternate positions. At the second hearing, she described difficulty grasping and picking up small objects, but was able to oppose thumb and forefinger and

**4.** It is undisputed that plaintiff's disability insured status expired on September 30, 1994, and that she must therefore be found to have been disabled on or before that date in order to qualify for benefits.

**5.** According to the medication chart she submitted at that hearing (A.R.270), Dr. McKinley prescribed Theodur and Brethine in 1979 and Valium in 1993, and Dr. Hyshaw prescribed Vicodin in 1989. Dr. McKinley's progress notes, which cover the period from January 1988–May 1992, indicate that he prescribed a Theodur, Brethine, and other medications during that period, but Valium is not listed, and there are no treatment records from him after May 1992. (A.R.222–249.) The only evidence of record from Dr. Hyshaw is a December 1989 report stating that plaintiff had a "normal neurological examination with back pain," which was probably "mechani-

cal in origin." (A.R.209.) There was no mention of medications in that report and no other documentary evidence that he prescribed Vicodin or any other medication.

**6.** The form indicates that Dr. McKinley prescribed Triavil, an anti-anxiety/anti-depressant drug, in April 1995, and that Dr. Hyshaw prescribed the following drugs: Naprosyn, a non-steroidal anti-inflammatory drug (NSAID) in September 1994; Toradol, a NSAID, in December 1994; Robaxin, a sedative used for pain relief, in March 1995; and Tylenol with Codeine # 2, an analgesic pain reliever, in May 1995. See Physicians' Desk Reference at 1755, 2428, 2458, 2507 (52nd ed.1998). As noted supra, note 5, there are no contemporaneous treatment records (or other corroborating evidence) from either doctor.

make a fist. (A.R. 110–116; *see also* A.R. 179–182.)

Plaintiff and defendant have stipulated that the ALJ fairly and accurately summarized the medical evidence. Where relevant, that evidence will be discussed below.

At the supplemental hearing, the vocational expert testified that plaintiff's past work as a data entry clerk was sedentary and semiskilled and that she had acquired transferable work skills through her employment. (A.R.129–131.) The expert further testified that a hypothetical individual with plaintiff's background and the limitations postulated by the ALJ could not perform plaintiff's past work but could perform the sedentary jobs of information clerk and a cashier, of which there are 50,967 and 556,030, respectively, in the national economy, (A.R.131–146.)

### DISCUSSION

Under 42 U.S.C. § 405(g), the Commissioner's decision is subject to review in order to determine whether: (1) the findings are supported by substantial evidence, and (2) the Commissioner applied the proper legal standard. *Swanson v. Secretary of Health & Human Services,* 763 F.2d 1061, 1064 (9th Cir.1985). "Substantial evidence is more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Plaintiff contends that the ALJ's decision should be reversed because (1) the ALJ failed to provide adequate justification for rejecting the opinion of Dr. McKinley, plaintiff's treating physician; (2) the ALJ erred in rejecting plaintiff's testimony regarding her subjective symptoms; (3) the ALJ failed to consider the combined effect of plaintiff's impairments; and (4) the vocational expert's testimony was based on a hypothetical question that did not accurately reflect plaintiff's limitations.

### 1. *Treating Physician*

Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. McKinley, plaintiff's treating physician, that plaintiff was totally disabled. That argument is without merit.

The ALJ rejected Dr. McKinley's 1990 and 1991 disability reports (A.R.224–225, 231, 272–273), which were based upon a May 1989 electromyogram (A.R.238), because that test was contradicted by the results of other diagnostic tests (MRIs, CT scans, x-rays, and a lumbar myelogram) conducted at the same time or within months thereafter.[7] (A.R. 206–207, 210–212, 217, 231, 235, 237, 239.) *See* 20 C.F.R. § 404.1527 (1997); *Lombardo v. Schweiker,* 749 F.2d 565, 567 (9th Cir. 1984.)[8] Furthermore, Dr. McKinley's opinion was contradicted by the reports of Dr. Hyshaw, plaintiff's own neurologist, and those of Drs. Schatz and Rashti, defendant's consultative examiners. In December 1989, Dr. Hyshaw's impression was "normal neurological examination with back pain … probabl[y] mechanical in origin." (A.R.209.) Dr. Schatz, an internist, concluded that plaintiff exhibited some symptoms of lumbar disease but could nonetheless stand and walk for 4–6 hours a day and lift and carry 20–40 pounds. (A.R.253.) Dr. Rashti, an orthope-

7. Those other tests were conducted at St. Francis Medical Center, the facility with which Dr. McKinley was affiliated. It is evident from the record that he had ordered some of those tests himself (A.R.217, 239), knew of negative results on the December 1989 myelogram and CT scan (A.R.206), and that he was in consultation with Dr. Hyshaw, who ordered several of the tests. (A.R.104, 206, 210–212, 237).

8. Plaintiff urges the court to consider a positive electromyogram (EMG) dated October 1994 (A.R.323) and Dr. Rashti's consultative report (A.R.301–308) of January 1995. While a post-expiration medical report may be relevant to an evaluation of disability, *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir.1988), the October 1994 EMG, without more, does not conclusively establish that plaintiff was disabled at any time prior to the expiration of her insured status on September 30, 1994, much less that she was totally disabled four years earlier, when Dr. McKinley issued his disability opinion. Similarly, Dr. Rashti's report indicates that his exam findings were consistent with disc disease as of January 1995, but he specifically noted that a myelogram, CT scan, and MRI taken in 1989 were normal, and that plaintiff remained capable of exertional activity consistent with sedentary work. (A.R 305.)

**1048**

dist, detected evidence of disc disease and opined that plaintiff could stand and walk for at least two hours, sit for about six hours, and lift and carry 20 pounds occasionally and 10 pounds frequently. (A.R.305–308.) The findings and conclusions of these physicians (one of whom was a treating physician and two of whom were specialists) constitute substantial evidence supporting the ALJ's determination that plaintiff retained the capacity for, at a minimum, sedentary work. (A.R. 208–209, 250–259, 301–308.) *See* 20 C.F.R. S § 404.1527(d), 404.1567(a) (1997) and SSR 83–10, 1983 WL 31251, at *5; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041–1042 (9th Cir.1995). Finally, the ALJ noted that Dr. McKinley did not utilize aggressive intervention measures after administering nerve blocks in 1990, despite his suggestion that surgery might be necessary if improvement were not shown.[9]

I find that the ALJ provided specific, legitimate reasons for rejecting Dr. McKinley's controverted opinion as to plaintiff's disability. *Magallanes v. Bowen*, 881 F.2d 747, 750, 751–752 (9th Cir.1989) (ultimate issue of disability is a legal determination reserved to the Commissioner; reports of examining physicians based on independent clinical findings may be substantial evidence to support ALJ's findings); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982) (questions of credibility and resolution of conflicts in medi-

cal reports are functions solely of the Commissioner).

### 2. *Credibility*

■ Plaintiff argues that the ALJ did not make specific findings based on substantial evidence for his rejection of plaintiff's excess pain and symptom testimony. I disagree.

The ALJ did not, in fact, reject plaintiff's subjective testimony altogether. He credited her complaints of pain and stiffness in the fingers, back pain, intermittent breathing difficulties, and occasional stomach upset from her use of medication. (A.R.16, 18, 131, 133.) He concluded that her subjective symptoms prevented her from performing her past relevant work but did not render her completely unable to work, citing (1) her ability to manage pain with medication during the relevant period [10]; (2) the absence of objective medical or other record evidence corroborating her testimony about the extent of her subjective symptoms and the adverse effects of her medications; and (3) her ability to carry on daily activities (housekeeping, shopping, socializing, driving) commensurate with a functional capacity for at least sedentary work. Moreover, the absence of treatment records from mid–1992 through September 1994 (and beyond) seriously undermines plaintiff's allegations of chronic, disabling pain and other symptoms. (*See supra*, n. 5.) [11]

---

9. Moreover, the evidence of record indicates that plaintiff was last seen by Dr. McKinley in 1992 and that plaintiff and her counsel were given the opportunity to submit updated treatment records, if helpful to her case, but did not do so. (A.R.31, 104–107, 147, 149–150, 222–249.) The logical inference is that Dr. McKinley did not treat plaintiff after 1992 and that his prospective opinion as to plaintiff's disability must be weighed accordingly, or that the records, if produced, would not have supported plaintiff's position. *See* 20 C.F.R. § 404.1527(d) and note 11, *infra.*

10. Contrary to plaintiff's suggestion, the evidence of record supports the ALJ's conclusion that plaintiff was able to manage her symptoms without "powerful, sedating drugs" during the relevant period. In December 1993, plaintiff testified that she regularly took asthma medications, Valium and Vicodin, which afforded some relief; however, the evidence of record does not corroborate her account. *See supra*, nn. 5,6. Furthermore, the medications listed on plaintiff's May 1995 medication form were not prescribed until

late 1994 or 1995, after the expiration of her insured status. (A.R.301–308, 315, 323.) Plaintiff's physicians presumably did not prescribe more potent painkillers at an earlier date because her symptoms did not require them, further suggesting that her excess pain allegations were exaggerated. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.1995) (per curiam) (ALJ may consider unexplained absence of treatment for excessive pain); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986) (a symptom that can reasonably be controlled by medication or treatment is not disabling).

11. Plaintiff (and his counsel) are reminded that they share responsibility with the ALJ to develop the record. Plaintiff bears the burden of proof at steps one through four of the sequential evaluation. Furthermore, the regulations charge the claimant with responsibility for coming forward with, or cooperating in the procurement of, all material evidence prior to, or at, the hearing. *See* 20 C.F.R. §§ 416.912(a),(c); 416.916; 416.1435. The regulations provide, in pertinent

I find that the ALJ adequately justified his decision to discount the credibility of plaintiff's subjective complaints. *See Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir.1995) (ALJ permitted to draw rational inferences from treatment history); *Matthews v. Shalala*, 10 F.3d 678, 679–680 (9th Cir.1993) (permissible credibility factors include, *inter alia*, limited treatment, minimal use of medications, and plaintiff's statement to doctor that pain had decreased); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir.1990) (as amended on denial of reh'g) (claimant's testimony that "she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries" inconsistent with claimed inability to perform all work activity); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir.1989) (an unexplained or inadequately explained failure to seek treatment can cast doubt on the sincerity of pain testimony).

### 3. *Combined Effect of Impairments*

Plaintiff's contention that the ALJ failed to consider the combined effect of her impairments is frivolous. The transcript of the hearing and the text of his written decision confirm that he considered plaintiff's hand, back, and pulmonary limitations, and the effects of her medication, in tandem when assessing her residual functional capacity. He determined that the combined effect of those impairments left her unable to resume work as a keypunch operator but that she could perform sedentary work or a limited range of light work.[12] (A.R.16, 18, 131–134, 138–140.)

### 4. *Vocational Expert Testimony*

Plaintiff asserts that the ALJ failed to utilize hypothetical questions that reflected all of her limitations, particularly pain and the side effects of her medications. That assertion is unpersuasive.

"The limitation of evidence in a hypothetical question is objectionable 'only if the assumed facts could not be supported by the record.'" *Magallanes*, 881 F.2d at 757. The two hypotheticals posed by the ALJ were based upon the examination reports and functional assessments of Dr. Schatz and Dr. Rashti (to the extent the latter's January 1995 report was consistent with evidence predating the expiration of plaintiff's insured status), test results, and, insofar as it was credited by the ALJ, plaintiff's testimony. As discussed above, the ALJ's assessment of the medical opinion evidence and plaintiff's subjective symptom testimony was supported by substantial evidence. He was not required to incorporate into his hypotheticals all of plaintiff's subjective complaints, nor was he bound to accept the limitations set forth in counsel's hypothetical. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir.1995) (as amended). The vocational expert's testimony that a person with the restrictions posited in either hypothetical could perform the jobs of information clerk or cashier was, accordingly, substantial evidence supporting the ALJ's finding of non-disability at step five.

## CONCLUSION

For all of the reasons stated above, I conclude that the Commissioner's decision is

---

part: "Each party shall make every effort to be sure that all material evidence is received by the [ALJ] or is available at the ... hearing." 20 C.F.R. § 404.1435; *see also* 20 C.F.R. §§ 416.912(a),(c); 416.916. The ALJ in this case was frustrated in his attempts to augment the record. He continued the supplemental hearing once to permit plaintiff to obtain counsel. When the hearing was reconvened, he gave plaintiff's counsel an additional opportunity to postpone the hearing after counsel advised him that he had not yet obtained updated treatment records from Drs. McKinley and Hyshaw. Counsel declined; the ALJ nonetheless indicated that he would consider additional evidence if it were produced promptly, but none was submitted. (A.R.87–100, 104–106, 147, 149–150.)

**12.** Plaintiff belatedly asserts that the ALJ should have considered her depression and anxiety. Plaintiff did not mention a mental impairment on her disability application and reports and expressly denied that she was alleging mental problems in her May 1995 testimony. (A.R.119.) Her attorney raised the issue, without elaboration, in his letter brief to the Appeals Council, but did not attempt to develop testimony or produce other evidence to support that claim on appeal. (A.R.8.) Other than plaintiff's testimony that she had been prescribed Triavil, which is indicated for anxiety, there is simply no evidence that she has a mental impairment, and the ALJ was not required to consider that claim.

supported by substantial evidence and comports with the proper legal standards. The Commissioner's motion for summary judgment is therefore GRANTED and the complaint is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.