**Corina GAYTON, Plaintiff,**

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, Defendant.**

**No. C 87-7630.**

United States District Court, N.D. Ohio, W.D.

Aug. 8, 1988.

---

Leticia G. Patino, Mark Heller, Advocates for Basic Legal Equality, Inc., Findlay, Ohio, for plaintiff.

Tom Karol, U.S. Attorney's Office, Toledo, Ohio, for defendant.

### ORDER

McQUADE, District Judge.

This cause was transferred to the United States Magistrate for a Report and Recommendation, and the Magistrate filed his Report and Recommendation on July 18, 1988. No objections having been filed and the Court having reviewed said Report and Recommendation, the findings and recommendations contained therein, and the record in this case,

IT IS HEREBY ORDERED that said Report and Recommendation be, and the same hereby is, adopted as the Order of this Court in this cause; and it is

FURTHER ORDERED that defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 be, and the same hereby is, granted; and it is

FURTHER ORDERED that plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56 be, and the same hereby is, denied.

**24**

## MAGISTRATE'S REPORT AND RECOMMENDATION

### July 18, 1988

JAMES G. CARR, United States Magistrate.

This is a social security case which has been referred to the undersigned for a Magistrate's Report and Recommendation. Pending are cross motions for summary judgment. For the reasons stated below, it is recommended that plaintiff's motion be denied and defendant's motion granted.

Plaintiff applied for disability insurance benefits on August 26, 1985, alleging she had been disabled since May 2, 1985, due to systemic lupus erythematosus (SLE). She later amended her onset date to May 2, 1983 (Tr. 52). Her application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) found that plaintiff was capable of only sedentary work, but could still perform her past relevant work as a bus driver. The Appeals Council, noting that the Dictionary of Occupational Titles classifies the kind of bus driving plaintiff did as light work, modified the ALJ's decision by finding that plaintiff was capable of light work.

There is little doubt that plaintiff is now disabled as a result of SLE. A reviewing physician stated in a report dated November 11, 1985, that plaintiff met the requirements for SLE, which is a listed impairment (Tr. 147). Plaintiff testified that she has been receiving supplemental security income since February, 1986 (Tr. 31). However, plaintiff's insured status for Title II purposes expired on December 31, 1984. Therefore, to receive disability insurance benefits, she must establish the onset of disability on or before that date.

■ Plaintiff argues that prior to the expiration of her insured status, she met the requirements of § 10.04 of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. She had a positive ANA test, which is one of the requirements of § 10.04, in 1974 (Tr. 85). However, in view of the fact that plaintiff does not claim that she was disabled before May 2, 1983, the significance of that test is questionable.

Plaintiff's treating physician, Dr. Lindamood, stated that he did not see plaintiff between April, 1981, and July, 1985 (Tr. 144). He also stated, in a report dated July 6, 1985, that plaintiff "had been asymptomatic over the past two years and has been on no medication." (Tr. 134; see also Tr. 133). During the period in question (from May 2, 1983, plaintiff's alleged onset date, until December 31, 1984, the expiration of her insured status) plaintiff was hospitalized twice, once for a cholecystectomy or gall bladder removal (Tr. 103, 110), and once the following month for nausea and vomiting (Tr. 122). Although these digestive problems may have been related to plaintiff's SLE, which affects multiple body systems, they were not disabling by themselves, nor are digestive problems part of plaintiff's current complaints. The only evidence that plaintiff's SLE was of disabling severity during the period in question consists solely of plaintiff's testimony and affidavits by her husband, her daughter, and a boarder. Plaintiff's complaints are certainly consistent with SLE, as her attorney shows by quoting from several medical works on SLE. However, in view of the almost total lack of objective medical evidence from this period, it cannot be said that the Secretary's finding that plaintiff did not then meet the requirements of § 10.04 is not supported by substantial evidence.

■ Plaintiff argues in the alternative that even if she did not meet the requirements of a listed impairment during the period in question, nevertheless she did not have the residual functional capacity to perform her past relevant work or any other, and she argues that the Secretary's findings to the contrary are not supported by substantial evidence. It is true that the Secretary's finding that plaintiff could perform light work is speculative. However, it is black-letter law that claimant has the burden of showing that she cannot perform her past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). In the instant case, no treating physician has said that plaintiff was disabled during the period in question. In view of the lack of

objective evidence regarding plaintiff's residual functional capacity during that period, the Secretary had little choice but to speculate. The Secretary cannot be faulted for doing so, because it is the plaintiff who has placed the Secretary in this position, by failing to provide adequate objective evidence. Plaintiff seems, in effect, to be trying to shift the initial burden of proof to the Secretary, but this is contrary to existing law and would certainly be unwise from a policy standpoint.

Plaintiff claims that the reason she did not see her physician during the period in question is that she could not afford to do so. This is believable, even though plaintiff has not explained what change in circumstances caused her to resume seeing her physician in 1985, or why her physician stated that she had been asymptomatic, instead of saying simply that he had not seen her. Even assuming, however, that plaintiff was not at fault in failing to provide medical evidence, that still would not shift the burden of proof to the Secretary. The fact remains that, for whatever reason, plaintiff has simply not met her burden of proof. Therefore, it cannot be said that the Secretary's finding that she was capable of performing her past relevant work is not supported by substantial evidence.

■ Plaintiff also argues that even if she did not meet the requirements of § 10.04 during the period in question, she nevertheless equaled those requirements. She argues that the Secretary employed improper legal criteria in finding that she did not equal those requirements, because the Secretary relied on medical equivalence, rather than functional equivalence. Medical equivalence is explained in 42 U.S. C.App. § 404.1526. By functional equivalence, plaintiff apparently means that a claimant should be found to equal the requirements of a listed impairment if the claimant's impairments, either singly or in combination, result in the same inability to perform work-related activities that would exist if the claimant met those requirements. Using a functional criterion to determine equivalence would entail considering vocational factors (age, education, and work experience or skill). The current medical criterion deliberately excludes explicit consideration of vocational factors.

There are two things wrong with plaintiff's argument. First, regardless of the criteria used, it would be paradoxical to say that a claimant equals, without meeting, the requirements of a listed impairment when the claimant has only one impairment, and there is a listing for that impairment. Most cases that involve equaling, without meeting, the requirements of a listed impairment involve multiple impairments. If a claimant has only one impairment, and there is no listing for that impairment, the claimant might be said to equal the requirements of a listed impairment which is similar or related. But when a claimant has only one impairment, even if it is a complex one, and there is a listing for that impairment, it is not clear what it would mean to say that the claimant equals, but does not meet, the requirements for that impairment.

Second, the undersigned believes that it would in general be unwise to substitute functional equivalence for medical equivalence in determining whether or not a claimant equals the requirements of a listed impairment. There is an important analogy between the third stage of the sequential evaluation procedure, which deals with listed impairments, and the second stage, which is the severity requirement. The Sixth Circuit has upheld the legitimacy of the severity requirement, pointing out that "the second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir.1985). The third stage also serves the goal of administrative efficiency by allowing the Secretary to grant benefits to claimants who are so obviously deserving that a more thorough inquiry would be unnecessary. Some circuits, however, have held that the severity requirement is improper, because 42 U.S.C. § 423(d)(2)(A) requires that vocational factors be considered in determining whether or not a claimant is disabled, yet the second stage does not take such factors

into consideration, or at least does not do so explicitly. Recently, the Supreme Court upheld the Sixth Circuit's view, primarily on the basis of legislative history. The Court also stated,

> [T]he Secretary decides more than 2 million claims for disability benefits each year, of which more than 200,000 are reviewed by administrative law judges. The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account. *Similarly, step three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background.*

*Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citation omitted; emphasis supplied).

Plaintiff's arguments for using a functional criterion to determine equivalence, rather than a purely medical one, are largely similar to the arguments that had been made against the severity requirement: vocational factors should be considered explicitly. Acceptance of plaintiff's view would conflate the third stage with the fourth and fifth stages, which do explicitly consider vocational factors, and would destroy the utility of the third stage as a means of enhancing the efficiency of the process. Indeed, if plaintiff's proposal were accepted, it is not clear what purpose the third stage would serve, or what reason there would be for not omitting it entirely. The third stage does not represent an independent basis for granting benefits, but only a shortcut. The third stage should be strictly interpreted for exactly the same reasons that the second stage should be liberally interpreted, so that "close calls" at that stage will be pushed through to the fourth and fifth stages without wasting a great deal of time and effort, which would defeat the purpose of the third stage.

Plaintiff supports her position by citing statutes and legislative history which emphasize that the determination of disability is, at bottom, an inquiry into the claimant's functional capacity. Faced with a similar argument concerning the severity requirement, the Sixth Circuit stated, "An impairment qualifies as non-severe only if the impairment would not affect a claimant's ability to work regardless whether the claimant was sixty-years old or only twenty-five, whether the claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary." *Salmi v. Secretary of HHS,* 774 F.2d 685, 691–92 (6th Cir.1985). In other words, vocational factors are considered implicitly even at the second stage, because the definition of "non-severe" takes into account all possible vocational profiles. Analogously, vocational factors are considered implicitly at the third stage too, because the requirements for listed impairments are presumable written to encompass all possible vocational profiles. It follows that if explicit consideration of vocational factors would make a difference, determining disability at the third stage would be improper. Plaintiff's view that vocational factors should always be explicitly considered at the third stage turns the statutory scheme on its head.

Plaintiff further argues that using medical criteria to determine equivalence is a denial of equal protection because it creates two classes of claimants, those whose residual functional capacity (RFC) is considered, and those whose RFC is never "realistically" considered (Plaintiff's Brief at 29). In principle, however, although a claimant could be granted benefits at the third stage without his RFC being explicitly considered, a claimant who had reached that stage could not be denied benefits without his RFC being explicitly considered at the fourth and possibly the fifth stages. Plaintiff argues, however, that a finding that a claimant does not have a listed impairment generally results in a finding that the claimant has the RFC to perform at least sedentary work, and that this is the stated policy of the Social Security Administration. Plaintiff quotes the following

passage from Social Security Ruling 86–6: "Under the regulations, a finding that an individual's impairment(s) does not meet or equal the Listing effectively indicates that he or she has a sufficient work capability at the sedentary or a higher exertional level, to require medical-vocational evaluation." A similar but unwritten policy, in the context of mental impairments, has been recognized and condemned by the Supreme Court. *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 2027 n. 5, 90 L.Ed.2d 462 (1986) (quoting a district court with apparent approval). Moreover, the presumption that a claimant who does not meet or equal the requirements of a listed impairment is capable of at least sedentary work is inconsistent with other well-accepted principles, because the claimant might need a sit-stand option, or might have non-exertional limitations. Drawing any conclusions at all about a claimant's RFC from his failure to satisfy the requirements of a listed impairment is certainly inconsistent with the view of the third stage expressed above. It is as illogical as the suggestion that a claimant who is found to have a severe impairment at the second stage should be presumed to be incapable of medium or heavy work. However, there is no need to throw out the baby with the bath water. This Court can and should refuse to endorse the above-quoted passage from SSR 86–6. This is a less drastic solution than insisting that vocational factors be considered at the third stage, and it obviates the need to do so.

It would be a different matter entirely to say that if a claimant is incapable of even sedentary work, he probably should have been found to be disabled at the third stage. This statement is logically equivalent to the statement that if a claimant is not found to be disabled at the third stage, he is probably capable of at least sedentary work. (One statement is the contrapositive of the other.) However, in practice there is a world of difference between the two, because the first statement starts with a claimant's RFC and looks backward to the third stage, with an eye toward improving the Listings. The second statement takes the Listings as they are and looks forward to the fourth and fifth stages, with an eye toward denying benefits.

In the instant case, it does not appear that any conclusion about plaintiff's RFC was drawn from her failure to meet or equal the requirements of a listed impairment. Rather, the Secretary's decision can be understood simply as the result of plaintiff's failure to meet her burden of proof at either the third stage or the fourth stage.

For all the foregoing reasons, it is

RECOMMENDED THAT plaintiff's motion for summary judgment be denied, and it is

FURTHER RECOMMENDED THAT defendant's motion for summary judgment be granted.