**Rene SORIA, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner of the Social Security Administration, Defendant.**

**No. CV 95–5120(JG).**

United States District Court, C.D. California.

Sept. 12, 1997.

Suzanne C. Leidner, Leidner & Leidner, Los Angeles, CA, for Plaintiff.

Nora M. Manella, U.S. Attorney, Leon W. Weidman, Assistant U.S. Attorney; Chief, Civil Division, Kevin B. Finn, Assistant U.S. Attorney, Los Angeles, CA, for Defendant.

## MEMORANDUM AND ORDER

GROH, United States Magistrate Judge.

Plaintiff has filed a complaint under 42 U.S.C. § 405(g) seeking review of the denial of Disability Insurance Benefits and Supplemental Security Income (SSI) by the Commissioner of the Social Security Administration (Commissioner). Defendant has answered, and the parties have filed cross-motions for summary judgment. For the reasons discussed below, the Commissioner's decision is affirmed and the complaint is dismissed.

### BACKGROUND

Plaintiff filed applications for benefits on February 28, 1992, claiming to have been disabled since November 15, 1990, due to back, neck and knee injuries. (Administrative Record (A.R.) 76, 79.) After plaintiff's claim was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on September 8, 1994. (A.R.38–75.) In a decision dated January 25, 1995, the ALJ found that plaintiff met the disability insured status require-

ments of the Social Security Act on November 15, 1990, the date he alleged he became unable to work, that plaintiff had not engaged in substantial gainful activity since 1991, and that the medical evidence establishes that plaintiff has neck, back and shoulder pain, iridocyclitis, a nervous condition, gastritis and a hernia. (A.R.25.) However, the ALJ found that plaintiff does not have any impairment or combination of impairments which meets or equals any impairment listed in Appendix 1 to Subpart P of the Regulations, No. 4. (*Id.*) Furthermore, the ALJ found that plaintiff's allegations of pain and limitations were not credible, and that plaintiff has the residual functional capacity to perform work "except for work involving lifting over 20 pounds, exposure to heights or machinery, climb more than occasionally and work requiring perfect vision." (A.R.26.) After considering the testimony of a vocational expert, the ALJ found, at step four of the sequential evaluation process,[1] that plaintiff is able to perform to his past relevant work as an apartment manager and is therefore not disabled. (*Id.*)

Plaintiff appealed the ALJ's finding of non-disability to the Appeals Council, which denied his request for review. (A.R.3–4.) Plaintiff how comes before this court. Both parties seek summary judgment.

**RELEVANT RECORD EVIDENCE**

1. *Plaintiff's Age, Education And Work Experience*

Born May 9, 1952, plaintiff was 38 years old on the alleged onset date and 42 when the ALJ rendered his decision. (A.R.26, 68–69, 79.) Plaintiff attained the eleventh grade and had worked prior to his disability onset date as a security officer, a restorative technician, a truck route salesman and a janitor. (A.R.67–69, 109.) Since 1990, plaintiff had collected welfare and had also been employed as the property manager at the apartment complex where he lived. He testified that he was·fired from that position in February 1994 (seven months prior to the hearing) due to a dispute with his employer. (A.R.42.)

2. *Plaintiff's Testimony About Pain And Limitations*

At the hearing before the ALJ, plaintiff testified that he could no longer work. Noting that his problems had been building up since an injury sustained 5 years before, he complained of pain in his back, neck, shoulder and hip, as a result of which he was unable to walk or sit for prolonged periods. Plaintiff further testified that he had problems with his eyes, arthritis in his jaw, a cyst in his throat, arthritis in the neck, problems with the lumbar spine and sciatic nerve, bursitis in the left hip, muscle deterioration in his left leg, depression, and anxiety. (A.R.51–59.) He stated that he has undergone arthroscopic surgery to his right knee, experiences recurrent pain and numbness, and has trouble coping. (A.R.53.) He also complained of severe stomach pain, exacerbated by medication, and testified that he had a hiatal hernia and gall bladder problems. (A.R.53.) Plaintiff testified that he relieves his pain by lying down, taking hot baths or showers and applying alcohol to relax his muscles. He sleeps about 2–3 hours a day. (A.R.55.) He underwent physical therapy two or three months before the hearing but still suffers "excruciating" pain. (A.R.55–56.) Plaintiff said treatments and medications· have afforded no lasting relief and cause side effects, including stomach irritation. (A.R.52–56, 60.) He testified that MediCal does not cover all of his medications and at times he cannot afford to buy medication. (A.R.52–53, 59.) Plaintiff testified

---

**1.** The regulations prescribe a five-step, sequential procedure. 20 C.F.R. §§ 404.1520, 416.920. Briefly summarized,

[t]he following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe'? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984) *see also Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991).

that, when not resting, he sweeps the kitchen and bathroom and cleans the furniture to help his wife. (A.R.59.)

### 3. *The Medical Records*

The medical records depict an individual who suffers from a number of problems, including eye problems, neck, back and knee problems, and gastritis, partly as a side-effect of the medications he is taking for his other ailments. However, only one medical report actually discusses plaintiff's ability to work in any detail. On May 15, 1993, consultative orthopedist Robert Greenfield, M.D., performed an examination of plaintiff for the State Agency. Plaintiff complained of neck pain associated with tingling and numbness of the hands and low back pain radiating to the left leg. (A.R.168.) Dr. Greenfield diagnosed plaintiff with "[n]eck pain, secondary to chronic cervical strain" and "[m]echanical low back pain due to lack of consistent objective findings." He said, "[i]n view of subjective complaints, no impairment is indicated." (A.R.172.) Dr. Greenfield stated on the "Medical Assessment Of Ability To Do Work Related Activities" form that plaintiff suffers from "no impairment-related physical limitations." (A.R.173.)

The only other discussion of plaintiff's ability to work is contained in a handwritten notation in a record of contact dated March 9, 1992, which says that "[t]he doctor said that the claimant's visual fields are not constricted severely enough to prevent him from working." (A.R.157.)

The additional medical records are quite voluminous and will be discussed further in connection with the issues to which they pertain.

### 4. *The Testimony Of The Vocational Expert*

To assist him in evaluating plaintiff's ability to work, the ALJ called upon the services of a vocational expert (VE). In response to the ALJ's first hypothetical question, the VE testified that a person able to lift 20 pounds frequently and 10 pounds occasionally, able to stand, walk or sit for six hours a day, but limited to occasional climbing and the avoidance of heights and hazardous machinery, could perform plaintiff's past work as a security guard and an apartment manager. (A.R.68–69.) [2]

Next, the ALJ asked the VE to assume that plaintiff has slight to moderate back and neck problems, a slight eye problem which does not prevent him from reading, a problem with the left knee which occurs when he stands too long, gastritis, gall bladder problems, and two hernias, resulting in moderate to severe upset stomach, pains which are alleviated somewhat by medications, but which medications have side effects consisting of moderate impact on concentration due to gastritis, a need to lie down two times per day for a period of half an hour each, and the ability to lift ten pounds frequently and twenty pounds occasionally. The VE testified that such limitations would preclude performance of plaintiff's past work; in particular, the lifting restrictions and the need to lie down for half an hour twice a day would interfere with the ability to engage in competitive employment, and would thus preclude a person with such limitations from doing plaintiff's past work, including the apartment manager's job, or other work available in the economy. (A.R.70–71.)

Finally, the ALJ asked the VE to assume a person able to lift 20 pounds frequently and 10 pounds occasionally, able to stand, walk or sit for six hours a day, but limited to occasional climbing and needing to avoid heights and hazardous machinery, with nervousness controlled by medication, pain in the neck, hip and knee, all controllable by medication, slight vision problems correctable with glasses, hernias, and gastritis brought on by nerves and as a side effect of medication, controllable to no more than a slight level by medication. The VE said such a person would be able to engage in plaintiff's past relevant work as an apartment manager and security officer. (A.R.72.)

The ALJ found that plaintiff "has the residual functional capacity to perform work-related activities except for work involving

---

**2.** In addition, the VE testified that if plaintiff had no exertional limitations, as per Dr. Greenfield's report, he would be able to perform all of his past relevant jobs. (A.R.68.)

lifting over 20 pounds, exposure to heights or machinery, climb more than occasionally and work requiring perfect vision," and, based on the testimony of plaintiff and the VE, found that plaintiff retained the functional capacity to perform his past relevant work as a property manager. (A.R.24–26.)

## DISCUSSION

██ Under 42 U.S.C. § 405(g), the Commissioner's decision is subject to review to determine whether: (1) the findings are supported by substantial evidence and (2) the Commissioner applied the proper legal standards. *Swanson v. Secretary of Health and Human Services,* 763 F.2d 1061, 1064 (9th Cir.1985). "Substantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Plaintiff makes three main arguments before this court, to which I now turn.

### 1. *Substantial Gainful Activity*

██ Plaintiff contends that the ALJ erred in finding that his activities as an apartment manager were substantial, gainful activity for purposes of the step four analysis.[3] I disagree.

First, plaintiff claims that "[t]he ALJ was not justified in assuming that claimant's employment generated earnings [were] sufficient to establish that he engaged in SGA [substantial gainful activity]." (Pl's. Mem. at 6.) This argument has some superficial appeal. Not all work constitutes "past relevant work" for purposes of the step four determination, but only that work which satisfies the conditions of "substantial gainful activity" (SGA). This requirement is indicated by 42 U.S.C. § 423(d)(1), which defines disability as the "inability to engage in any substantial gainful activity," and is mandated by the Commissioner's own interpretive ruling, Social Security Ruling (SSR) 82–62 (PPS–80: A

Disability Claimant's Capacity To Do Past Relevant Work), which states, "Capacity to do past work may be indicative of the capacity to engage in SGA *when that work experience constituted SGA* and has current relevance considering duration and recency." 1982 Cum.Bul. 185, 187 (emphasis added). This ruling is binding on the Commissioner, 20 C.F.R. § 422.406(b)(1), and directs the conclusion "that 'previous work,' in order to be considered 'past relevant work,' must first be found to rise to the level of [SGA]." *Lauer v. Bowen,* 818 F.2d 636, 639 (7th Cir.1987). *See also Burton v. Bowen,* 704 F.Supp. 599, 604 (E.D.Pa.1989) ("[i]in order for previous employment to be considered 'past relevant work,' it must have been a substantial gainful activity"); 3 Soc.Sec.Law & Prac. § 43:84 (T. Traverse 1989).

Generally, for years after 1989, earnings of less than $300 a month are presumptively not substantial gainful activity while earnings of more than $500 a month are presumptively substantial gainful activity. *Byington v. Chater,* 76 F.3d 246, 250 (9th Cir.1996) (citing 20 C.F.R. § 404.1574(b)(2)(vii) & (3)(vii)). Plaintiff testified that he paid only $88 per month for his apartment because he had $300 per month deducted from his rent for being the apartment manager. (A.R.43–45.) Therefore, his monthly average earnings do not rise to the level at which the Commissioner "will consider that [his] earnings from [his] work activities as an employee show that [he] ha[s] engaged in substantial gainful activity." 20 C.F.R. §§ 404.1574(b)(2), 416.972(b)(2).

However, earnings are not the end of the inquiry. "Substantial work activity" is defined in the regulations as work that "involves doing significant physical or mental activities" and "is the kind of work usually done for pay or profit." 20 C.F.R. § 416.972(a), (b). "'[W]ork may be substantial even if it is done on a part-time basis ....'" *Byington,* 76 F.3d at 250 (quoting *Wright v. Sullivan,* 900 F.2d 675, 678 (3rd Cir.1990)); *see also* 20 C.F.R. § 404.1572(a)

---

**3.** The ALJ concluded that plaintiff was capable of resuming "his past relevant work as an apartment manager with a residual functional capacity for the full range of light work. Although he received a rental rebate as part of his salary, an

apartment was an in-kind contribution and the value of such must be considered in determining that this work *was in fact, substantial gainful activity* that meet[s] the regulation requirements." (A.R.25) (emphasis added).

(1989). "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572(b), 416.972(b).

Because plaintiff's $300 a month rent reduction neither exceeds $500 nor falls below $300, "the provisions of 20 C.F.R. § 404.1574(b)(6) must be applied." *Byington,* 76 F.3d at 250. Under these provisions, further inquiry will be made to determine whether work activities rise to the level of substantial gainful activity; specifically, whether:

> (i) Your work is comparable to that of unimpaired people in your community who are doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work, or (ii) Your work, although. significantly less than that done by unimpaired people, is clearly worth the amounts shown in paragraph (b)(2) of this section, according to pay scales in your community.

20 C.F.R. §§ 404.1574(b)(6), 416.974(b)(6).

This case is similar to *Pickner v. Sullivan,* 985 F.2d 401 (8th Cir.1993), in which the court affirmed a finding by an ALJ that a woman who worked as a part-time bookkeeper and apartment manager had engaged in substantial gainful activity even though her earnings fell below the earnings guidelines. After pointing out that "earnings below the guidelines are not inconsistent with substantial gainful activity as a matter of law," the court reasoned:

> Appellant's work as a secretary/bookkeeper and as an apartment manager was 'substantial' because it involved doing significant physical and mental activities. Appellant's low earnings were in part due to the fact that she was either self-employed or only worked part-time. However, work that is done on a part-time basis may be considered substantial. 20 C.F.R.

§ 404.1572(a). In addition, her work as a secretary/bookkeeper and an apartment manager was 'gainful' because ... it is the kind of work usually done for pay or profit, even though her earnings were minimal. Work activity may be considered gainful whether or not a profit is realized.

*Pickner,* 985 F.2d at 403.

Similarly, here, plaintiff's work involved substantial mental and physical effort and is of the sort usually engaged in for profit. Plaintiff testified that the apartment complex he lives in and manages consists of a single, 17–unit building. (A.R.45–47.) For his $88 per month, he received a "[t]wo bedroom house," with a kitchen, front room, bathroom and hallway. (A.R.47.) As the apartment manager, plaintiff would:

> [d]o a little bit of sweeping, you know; landscaping here and there and you know, checking the gates and all the stuff that I would have to do at night; sometimes walk around; a little bit of sweeping on the outside because there are a lot of little rocks.

(A.R.45.) He would also pick up the trash once a week and would go through the building up to four times a day to make sure everything was alright. (A.R.46.) He collected rent money for the owner, shared with his property supervisor the task of showing apartments to prospective tenants, and shared with the owner the job of deciding who could move in. (A.R.47, 66–67.)

That plaintiff may have received only $300 per month in reduced rent in exchange for his apartment management duties did not preclude the Commissioner from concluding that those duties constituted substantial gainful activity. In sum, I conclude that the ALJ did not err in deciding that plaintiff's activities as an apartment manager qualified as past relevant work for purposes of the step-four analysis.[4]

---

4. The ALJ's finding that plaintiff had not engaged in substantial gainful activity (SGA) since 1991. (A.R.25) conflicts with his characterization of the apartment manager position as SGA at step four. In view of my conclusion that the ALJ's analysis of SGA at step four was proper, it is evident that the ALJ could have terminated the sequential evaluation process at step one. In other words, because plaintiff worked as an apartment manager from 1990 until February 1994 (seven months prior to the hearing and more than three years *after* his alleged onset), he failed to meet the most basic requirement for disability benefits: the inability to work for twelve consecutive months.

### 2. *Ability To Perform Past Relevant Work*

■ Plaintiff's second contention is that the ALJ failed properly to evaluate the demands of plaintiff's past relevant work and his ability to perform that work. (Pl's Mem. at 6.) That argument is without merit.

At step four, the ALJ is obliged to ascertain the demands of the claimant's former work and to compare those demands with present capacity. 20 C.F.R. § 404.1520(e); *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). The ALJ fulfilled that obligation in this case. At the hearing, he thoroughly explored the tasks involved in each of plaintiff's former jobs. (A.R.45–50, 66–67.) The ALJ also fully considered the issue of plaintiff's functional capacity in light of the medical record and the testimony given at the hearing. (A.R.23–25.) Having determined that plaintiff retained the capacity for light work, except for exposure to heights or machinery, more than occasional climbing, and work requiring perfect vision, the ALJ proceeded to make an explicit finding that plaintiff's past work as an apartment manager did not require the performance of work-related activities precluded by his limitations. (A.R. 26, Finding No. 6.) The latter finding was substantiated by the testimony of a vocational expert, who affirmed that a person with the foregoing limitations could perform the duties of an apartment manager. (A.R.65–72.)[5] That conclusion is further validated by the fact that plaintiff *had* actually performed that job until a few months before the hearing.

Also to be borne in mind is that plaintiff bears the burden of proof at step four.[6] By his own testimony, plaintiff stopped working as an apartment manager in February 1994 because he was fired—not because he was incapacitated. Nor did he adduce any evidence of a change in condition in the months preceding the September 1994 hearing; if anything, treatment notes from February through June 1994 indicate that plaintiff's subjective complaints decreased during this period.[7] (A.R.232–240.) The medical evidence does not, moreover, establish that plaintiff was incapable of performing his past work. Indeed, the only physician to address plaintiff's ability to work opined that he had *no* functional impairments as of May 1993. Finally, as discussed *infra*, the ALJ articulated sufficient reasons for rejecting plaintiff subjective complaints. In sum, the ALJ properly concluded that plaintiff retained the functional capacity to perform his past job as an apartment manager.

### 3. *Subjective Complaints*

■ Plaintiff further contends that the ALJ erred in failing to provide adequate reasons for his credibility assessment. The rule regarding the evaluation of subjective complaints was set forth by the Court of

---

See 20 C.F.R. §§ 404.1509, 416.909 (one-year duration requirement), 404.1520(a), 416.920(a) (to be disabled, one must not be working and impairment must meet the duration requirement).

5. The ALJ's use of the services of a vocational expert testimony was appropriate in this context. *See* Acquiescence Ruling AR 90–3(4) ("Use of Vocational Expert or Other Vocational Specialist in Determining Whether a Claimant Can Perform Past Relevant Work—Tiles II and XVI of the Social Security Act"); SSR 82–62 (PPS–80: "Titles II And XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General"); SSR 82–61 (PPS–72: "Titles II And XVI: Past Relevant Work—The Particular Job Or The Occupation As Generally Performed"); *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir.1996).

6. At step 4 of the sequential evaluation process, the ALJ will find plaintiff not disabled unless plaintiff proves he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.1990) ("The burden of establishing disability is initially on the claimant, who must prove that she is unable to return to her former type of work"); *Gray v. Heckler*, 760 F.2d 369, 372 (1st Cir.1985) ("[I]t is the claimant, not the Secretary (or A.L.J.) who has the burden of proving inability to perform her former type of work"); *Gayton v. Secretary of Health & Human Services*, 691 F.Supp. 22, 24 (N.D.Ohio 1988) ("[I]t is black letter law that the claimant has the burden of showing that she cannot perform her past relevant work").

7. Even if there were evidence of disability after February 1994, the twelve-month durational requirement would not have been met. *See* n. 4, *supra*.

Appeals in *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc):

> [O]nce the claimant produces medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. (Citation omitted.) Further, although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion.

Plaintiff, in his brief, does not specify what testimony the ALJ should have accepted, but merely makes the general statement that the ALJ "provides no specific, legitimate, or clear and convincing reasons for discrediting claimant's testimony other than a lack of objective evidence." (Pl's. Mem. at 8.)

On its face, this assertion is wrong. The ALJ's findings regarding claimant's testimony reads as follows:

> The Administrative Law Judge rejects the testimony of the claimant as it is not supported by the credible medical evidence, thus it was not credible. First, he never stopped working because of the physical problems. He was fired from the Physical Therapy Center because of a violation of office policy against borrowing money from fellow employees. He was fired from the apartment manager job because of a difference of opinion with the owner, although, he continues to live at the apartment. The security guard job was lost due to a shift change dispute. He does not seek medical treatment and certainly he would want to see a physician for increased pain medication if the pain was as severe as he stated. Even as early as January 1992 ... he declined to wear the prescribed brace and was apparently look-

ing for work. His own home treatments along with the use of prescribed medications are relieving his complaints. His treating physician indicated that the claimant had no limitations to which he should adhere. He is on Xanax, which adequately controls the nervousness.

(A.R.24.) Thus, it is clear that the ALJ did not discredit plaintiff's testimony solely on the basis of the lack of objective medical evidence.

Looking to the propriety of the ALJ's reasons, they are adequate and supported by the record. The ALJ's first reason is that plaintiff did not stop working because of his alleged impairments. (A.R.24.) Plaintiff testified at his hearing that he "got fired" from the property management job because he "got mad at the company guy that was there." (A.R.42.) He testified that he left his security guard job because the company let him go after he tried to change from the night to the day shift.[8] He testified that he left the restorative technician job because the company fired 'him after he violated company policy on borrowing money. (A.R.50–51.) Finally, plaintiff testified he could not recall any specific incident on November 15, 1990 (A.R.51), which is the date he claims in his applications that his disability started. (A.R.76, 79.) The ALJ's finding that the plaintiff did not stop working because of his pain and disability is amply supported in the record.

Regarding the ALJ's second reason for rejecting plaintiff's testimony, his failure to seek medical treatment for his pain, his failure to wear "the prescribed brace" and the fact he "was apparently looking for work," treatment notes dated January 29, 1992 from Robert Cowan, M.D., of White Memorial Medical Group show that plaintiff "has stopped taking nonsteroidals due to upset stomach and he is no longer wearing his

---

8. The testimony reads:

> Q. Why did you leave or what were the circumstances of your leaving that [security guard] job?
> A. They were going to give me another job because I was working from 11:00 to 7:00. I wanted to be with my wife and daughter. I was going to go into daytime. And I came back to the company and they said they wer-

> en't going to give me a job and they were going to deduct money. So from that time on I went to get the job at the daytime. They called the supervisor upstairs and they said that they let me go or something. I don't know for what reason. I don't know. I have no idea but they said they fired me. And then they said I did a voluntary quit. I don't believe that.
> (A.R.48–49.)

brace. He feels that he has been working looking for work and is very concerned about his ability to work given his neck pain an numbness in his hands, occasionally in his right leg." (A.R.221.) Treatment notes from Dr. Cheri Shapiro refer to plaintiff's involvement in an occupational therapy and rehabilitation program and failure to wear the "soft cervical collar" despite instructions to do so. (A.R.218, 220.) Failure to seek pain medication or medical treatment is a valid reason for discounting excess pain testimony.[9]

The last reason the ALJ gave, the effectiveness of plaintiff's home treatments and prescribed medications (A.R.24), also finds some support in the record despite plaintiff's testimony to the contrary. Dr. Shapiro found plaintiff "overall improved" in her treatment notes of September 30, 1993 (A.R. 217), and plaintiff himself testified that Xanax adequately controls his nervousness.[10]

Because the ALJ articulated legally sufficient reasons for his assessment of plaintiff's subjective complaints, plaintiff's attack on his credibility determination is unfounded.

Plaintiff also complains generally that the ALJ's questions to the VE minimized his problems and contained "inappropriate" assumptions. However, the only specific objection advanced in this regard is that the hypo-theticals did not include the side-effects of plaintiff's medications.[11]

A careful reading of the transcript and the ALJ's decision reveals that the ALJ's hypotheticals included a range of assumptions about the adverse effects of plaintiff's medications. (A.R.24–26, 68, 70, 72.) The ALJ ultimately determined that side-effects did, in fact, restrict plaintiff's functional capacity (in that he needed to avoid heights and machinery).[12] The vocational expert testified that a person with such limitations could perform the duties of an apartment manager. (A.R.26, 68–69.) The expert also testified, in response to another hypothetical, that gastritis caused by "nerves and as a side effect of medication" that was controllable to no more than a "slight" level by other medication would not bar performance of the apartment manager's job. (A.R.72.)

The ALJ did not err in rejecting the existence of more serious side-effects. First, most, if not all, of the notations in the medical evaluations concerning side-effects are based on plaintiff's self-reports, without clinical verification. (See, e.g., A.R. 53 (plaintiff says medication irritates his stomach), 54 (Xanax "contributes too"), 60 (doctors recommend medications which he cannot take "because of the stomach problem"), 144 (Dr. Cowan: plaintiff stopped taking nonsteroi-

---

9. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir.1995) (per curiam) (affirming ALJ's rejection of excess pain complaints where, among other things, plaintiff had not required prescription pain medication); Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995) (adverse credibility determination supported by absence of treatment or medication and plaintiff's report of good result from surgery). Plaintiff did testify that he is on General Relief and that Medical does not cover all of his medications. (A.R.43, 59–60.) However, this does not explain his failure to wear the cervical collar or his failure to seek more aggressive treatment than the medications already prescribed to him. Moreover, while there is some evidence that side-effects have limited plaintiff's use of medications (A.R.218, 221), there is no evidence that side-effects, though present, preclude plaintiff from following his present medication regimen. (See A.R. 53—hernia and gall bladder still give him problems "because of the medication I'm taking, it irritates the stomach").)

10. The plaintiff's testimony on this point reads:
Q. I note you're taking Xanax. Why are you taking Xanax?

A. Well, I have a lot of anxiety, and a lot of stress and the doctor recommended it for me as to calm myself down because I'm very hyper. *And the medication did the job somewhat* to take the hyperness—I guess that's what he called it—but also anxiety and stress related to all the problems that I'm facing right now. (A.R. 40–41 (emphasis added).)

11. Plaintiff testified that his medications had only limited effect in controlling his symptoms; that they caused stomach problems; that he was told at one point not to take any medications and that he was given cortisone shots in the neck and back but that "even that did not work." (A.R.60, 52–56.) Plaintiff also notes that his medical records confirm that he complained of side effects (drowsiness, dizziness, and gastritis) to his doctors (A.R.145–146, 218–219, 236.)

12. The logical inference from these limitations is that the ALJ credited, at least in part, plaintiff's complaints of suffering from dizziness and drowsiness due to medications.

dals "due to upset stomach"), 219 (Dr. Shapiro: medications discontinued because plaintiff "claims" drowsiness and gastritis [13]).) The ALJ was not obliged to adopt physicians' reports of side-effects that merely reflected plaintiff's subjective complaints. *See Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir.1989); *Brawner v. Secretary of Health and Human Services,* 839 F.2d 432, 433–34 (9th Cir.1988) *(per curiam ).* In any event, none of the reports indicate that the claimed side-effects, even if credible, were uncontrollable or completely disabling; at least one examining physician, Dr. Greenfield, an orthopedic specialist, noted no ill-effects from medications and detected no functional impairments. Most important, at the risk of repetition, is the undisputed fact that plaintiff remained capable of performing, and did perform, the duties of an apartment manager through February 1994, despite whatever adverse effects he may have experienced from his medications.

I conclude that the ALJ's hypothetical questions were proper and that his assessment of the effects of plaintiff's medications was supported by substantial evidence. *See Magallanes v. Bowen,* 881 F.2d 747, 756–57 (9th Cir.1989) (ALJ's hypothetical questions need not include all possible restrictions; they are sufficient if the assumed restrictions are supported by substantial evidence); *Martinez v. Heckler,* 807 F.2d 771, 713–74 (9th Cir.1986) (same).

### CONCLUSION

For the reasons discussed above, I conclude that the ALJ did not commit legal error, and that his determinations are supported by substantial evidence. The Commissioner's motion for summary judgment is therefore GRANTED, and the complaint is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

13. It is clear that plaintiff had gastritis. (A.R. 192–202 (pathology reports).) However, plaintiff contends that his medications caused or aggravated this condition.